# Chesapeake & Ohio Railway Company v. Stapleton, et al.

(Decided June 12, 1913.)

## Appeal from Floyd Circuit Court.

1. Trial—Improper Argument—Objection to—How Taken.—When improper argument of counsel for the successful party is relied on as a ground for reversal, the objectionable argument should be set out in the bill of exceptions, which should also show that objection was made to it at the time.

2. Trial—Continuance—Discretion of Court.—In civil actions the matter of granting a continuance is largely in the discretion of the trial court, and when the affidavit for a continuance is permitted to be read as the deposition of the absent witness, it is only in very exceptional cases that the refusal to grant a continuance will be error.

HARKINS & HARKINS, WORTHINGTON, COCHRAN & BROWNING and F. T. D. WALLACE for appellant.

MAY & MAY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Stapleton, while engaged as a laborer for the appellant railway company, received personal injuries, and in this suit to recover damages he had a judgment for $650. A reversal is asked for alleged error in the admission and rejection of evidence and in giving and refusing instructions, because the verdict is excessive, and for misconduct of counsel for appellee in the argument of the case, and failure of the trial court to grant a continuance.

The facts are substantially these. The railway company was engaged in ballasting its road, and it used in doing this work a train consisting of an engine and cars known as gondola hopper cars. It seems that in the bottom of the beds of these cars were doors that opened toward the track, letting the contents of the cars fall out on the track; and the cars were moved by an engine so as to distribute the ballast as needed. On the occasion in question, appellee, in company with several other laborers, was in one of these cars helping to move the crushed rock towards the opening in the bottom, so that it might fall through on the track, and it appears that while he was standing on a rod that run through the bottom of the bed of the car over the opening, the car was suddenly moved by the engine and he was thrown through the opening to the track and dragged by the car and stone some distance before the train was stopped.

There is some conflict in the evidence as to the distance the car was moved after appellee fell through the opening and before it was stopped. The witnesses in his behalf say the car ran about thirty feet, while witnesses for appellant say that it only ran about seven feet. But however this may be, it is not disputed that appellee fell through the opening and was dragged some distance.

We may also say at this point that the judgment is not excessive, as the evidence shows that appellee was seriously injured.

It also appears that it was the custom of the employees of the company in charge of the train to give warning

or notice to the laborers working in the cars, as appellee was, when the cars were going to be moved, so that they might take whatever precautions were necessary to prevent being injured by the movement, and several witnesses for the company testified that before the car was moved on the occasion in question the usual warning was given, while an equal number of witnesses in behalf of appellee say that the car was moved without warning or notice. This question, which is really the controlling one in the case, is the subject of much contradictory evidence, but the witnesses who testified on this point for appellee had opportunity to know whether the notice was given or not, and their evidence was sufficient to warrant the jury in finding that no notice was given. We may further observe that the admitted fact that it was usual and customary to give notice shows that it was regarded as important that the train should not be moved until the laborers in the car were notified of the movement.

It is also apparent that the injuries received by appellee were caused entirely by the movement of the train, because if he had fallen through the opening when the car was standing, it is not at all probable that he would have been hurt.

Taking up now the errors relied on for reversal, complaint is made that on the examination of one of the laborers counsel for appellee, over the objection of counsel for appellant, was permitted to ask him if he had not heard the foreman tell the man when he was in a hurry that it did not make any difference if some of them did get killed as there was another man waiting for the job and the witness answered yes. This question was invited by questions asked the witness by counsel for appellant in an effort to show that the foreman was very careful to avoid injury to the men, and made every possible effort to keep them from getting hurt. This entire line of interrogation by the attorneys for both parties was improper and incompetent, and except for the fact that the question complained of was to rebut questions tending to show that the foreman was an exceedingly careful man, it would be sufficient to justify a reversal of the case. But considering the circumstances under which the question was asked, we do not think the error sufficient to warrant us in ordering a new trial.

It is also argued by counsel for appellant that the attorney for appellee, in his closing argument, was guilty of misconduct in making statements outside the record

for the purpose of prejudicing the jury. The improper argument is pointed out in the motion and grounds for a new trial, but we do not find in the bill of exceptions any reference to it, or that any objection was made to it at the time, and therefore the misconduct of counsel is not available error on this appeal. If counsel desire to rely for reversal on the fact that opposing counsel was guilty of misconduct in the argument of the case, the improper argument should be shown in a bill of exceptions, together with the objections and exceptions to it that were made at the time.

Another assigned error is the failure of the trial court to grant a continuance. A motion for a continuance was made on account of absent witnesses, but the court permitted the affidavit to be read as the deposition of the absent witnesses, and as several witnesses who were present testified to substantially what it was set out the absent witnesses would say, we do not think the court erred in refusing a continuance. In civil actions the matter of granting a continuance is largely in the discretion of the trial court, and when the trial court permits the affidavit to be read as the deposition of the absent witness, it is only in very exceptional cases that the refusal to grant a continuance will be error. Section 315 of the civil code, which provides the method of obtaining a continuance, declares in part that if the affidavit of what the absent witness would say if present is permitted to be read, the trial shall not be postponed on account of his absence.

The instructions are also criticised, but we think they submitted fairly to the jury the substantial issues in the case. In the instructions the jury were told in substance that if the persons in charge of the train carelessly and negligently moved the car in such a violent manner as to throw appellee through the opening, they should find for him in damages, but that if appellee knew or had any information that the cars were going to be moved, and after receiving such warning, failed to exercise ordinary care for his own safety, they should find for the company. They were further told that he assumed all the risks incident to the employment that were not the result of carelessness on the part of persons in charge of the train.

Upon the whole case we think the appellant company had a substantially fair trial, and the judgment is affirmed.