SIMPSON COUNTY STEEPLECHASE ASSOCIATION, INC. d/b/a Dueling Grounds Race Course and Dr. Arnold G. Pessin, Appellants/Cross–Appellees,

v.

Jackie ROBERTS, Darlene Liles, Susan Anthony, and Jerry Edwards, Appellees/Cross–Appellants.

Nos. 93–CA–1267–MR, 93–CA–1346–MR.

Court of Appeals of Kentucky.

April 14, 1995.

As Modified May 5, 1995.

Robert D. Wilkey, Janet Jobe Crocker, Franklin, for appellants/cross-appellees.

Herbert L. Segal, John Christopher Sanders, Louisville, for appellees/cross-appellants.

Before COMBS, GARDNER, and JOHNSTONE, JJ.

GARDNER, Judge:

Appellants, Simpson County Steeplechase Association, Inc. and Dr. Arnold Pessin (Pessin), appeal from a judgment of the Simpson Circuit Court awarding the appellees, former employees of Simpson County Steeplechase, compensatory and punitive damages based upon their alleged wrongful termination as a result of attending a meeting with Pari–Mutuel Clerks Union of Kentucky (Pari–Mutuel). The former employees have cross-appealed. After reviewing the record, this Court affirms.

Simpson County Steeplechase owns and operates the Dueling Grounds Race Course in Simpson County, Kentucky. Bradley Michael Shannon (Shannon) was the sole shareholder and director of the corporation. Pessin was employed by the corporation as a consultant and performed managerial duties at Dueling Grounds. Shannon stated that Pessin was authorized to hire and fire em-

ployees. The appellees were pari-mutuel clerks employed at Dueling Grounds. Ten of the clerks, in June 1991, discussed union representation with Pari–Mutuel. A meeting was set up for Monday, July 29, 1991. The clerks contended that Pessin learned of the meeting prior to its occurrence, and he made threatening and intimidating statements to them. As a result, the location of the meeting was changed. On the day following the meeting, eight of the ten clerks who had attended the meeting were "laid off" and were escorted out of Dueling Grounds. The other two employees were subsequently "laid off."

Shortly thereafter, nine of the clerks and Pari–Mutuel filed suit in circuit court seeking compensatory and punitive damages as well as injunctive relief. The circuit court denied the claims for injunctive relief, finding that they were not entitled to this as a matter of law. The case was tried before a jury, and a verdict was returned for the appellees. The jury awarded each appellee compensatory damages based upon lost wages and awarded $25,000 in punitive damages to each appellee. Pari–Mutuel was awarded $3,800 in compensatory damages. The court formally entered judgment on March 19, 1993.

Appellants filed a motion for a new trial, a motion to alter, amend, or vacate, and a motion for judgment notwithstanding the verdict. All post-trial motions were denied by the circuit court. Appellants have appealed, and the appellees have cross-appealed.

Appellants first argue that the circuit court erred in instructing the jury that punitive damages could be awarded against the defendants for wrongful discharge. They maintain that allowing recovery of punitive damages contravenes Kentucky's statutes and case law. After reviewing the evidentiary record, Kentucky law, and law from other jurisdictions, this Court has found no reversible error.

■ Kentucky Revised Statutes (KRS) 411.184 and 411.186 address punitive damages. Under KRS 411.184(1)(f), " '[p]unitive damages' includes exemplary damages and means damages, other than compensatory and nominal damages, awarded against a person to punish and to discourage him and

others from similar conduct in the future." *See Hensley v. Paul Miller Ford, Inc.,* Ky., 508 S.W.2d 759 (1974); *Harrod v. Fraley,* Ky., 289 S.W.2d 203, 205 (1956). Further, "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." KRS 411.184(2). The key element in deciding whether punitives are appropriate is malice or conscious wrongdoing. *Fowler v. Mantooth,* Ky., 683 S.W.2d 250, 252 (1984). Malice may be implied from outrageous conduct and need not be express so long as the conduct is sufficient to evidence conscious wrongdoing. *Id.*

■ In the instant case, this Court is presented with an issue of first impression, whether punitive damages should be awarded in a case where termination of an employee occurs because of union activity. KRS 336.130(1) and (2) provides,

(1) Employees may, free from restraint or coercion by the employers or their agents, associate collectively for self-organization and designate collectively representatives of their own choosing to negotiate the terms and conditions of their employment to effectively promote their own rights and general welfare. Employees, collectively and individually, may strike, engage in peaceful picketing, and assemble collectively for peaceful purposes.

(2) Neither employers or their agents nor employees or associations, organizations or groups of employees shall engage or be permitted to engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion.

KRS 446.070 provides that a person injured by the violation of any statute may recover from the offender such damages as he or she sustained by reason of the violation although a penalty or forfeiture is imposed for such violation.

The Kentucky Supreme Court in *Pari–Mutuel Clerks' Union of Kentucky v. Kentucky Jockey Club,* Ky., 551 S.W.2d 801 (1977), recognized that a civil action for damages exists in cases where employees are

discharged in violation of KRS 336.130; however, the Court held that the statute does not permit injunctive relief. The opinion did not address punitive damages. In reaching its decision, the Court noted that there are few tactics available to an employer seeking to discourage association by its employees for the purpose of collective bargaining which are more coercive or intimidating than the discharge or threat of discharge of those employees pursuing that objective. *Id.*, at 803. In *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows*, Ky., 666 S.W.2d 730 (1983), the Supreme Court also recognized an action for damages for the termination of an employee as a result of filing a workers' compensation claim.

There is somewhat of a split among courts in other jurisdictions regarding whether punitive damages are recoverable for wrongful termination based upon filing a workers' compensation claim or a similar reason. Generally, punitive damages have been allowed in actions for wrongful discharge of an at-will employee where the action has been based upon the claim that the discharge was in violation of public policy. Francis M. Dougherty, Annotation, *Damages Recoverable For Wrongful Discharge of At–Will Employee*, 44 A.L.R.4th 1131, 1138 (1986). Courts have reasoned that such a violation sounds in tort and that all damages including punitives are available. *Id.* Punitive damages are thus used as a deterrent. *Id. See Lozier Corp. v. Gray*, 624 So.2d 1034 (Ala. 1993); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *Commodore Home Systems, Inc. v. Superior Court of San Bernardino County*, 32 Cal.3d 211, 185 Cal.Rptr. 270, 649 P.2d 912 (1982); *Murphy v. City of Topeka–Shawnee County Dept. of Labor Services*, 6 Kan. App.2d 488, 630 P.2d 186 (1981); *Reed v. Sale Memorial Hospital and Clinic*, 698 S.W.2d 931 (Mo.App.1985); *Potter v. Village Bank of New Jersey*, 225 N.J.Super. 547, 543 A.2d 80 (1988); *Hicks v. Tulsa Dynaspan, Inc.*, 695 P.2d 17 (Okla.App.1985); *Borden, Inc. v. Guerra*, 860 S.W.2d 515 (Tex.App.

1993); *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282 (Tex.1993).

The Nevada court in *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394 (1984), a case involving discharging of employees due to filing workers' compensation claims, noted that punitive damages are appropriate where the conduct of the employer was malicious, oppressive or involved fraudulent conduct. The Illinois courts in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), and *Midgett v. Sackett–Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984), held that punitive damages must be recoverable in cases involving termination after filing workers' compensation claims in order to dissuade such actions by employers. Recognition of a cause of action in tort where such employer conduct occurs, merely allows an employee an additional remedy in areas where strong public policies are involved. *Midgett v. Sackett–Chicago, Inc.*, 473 N.E.2d at 1283.

The number of other state courts addressing the infringement on an employee's right to associate with a union is small. In *Quinn v. Buchanan*, 298 S.W.2d 413 (Mo.1957), certain employees were threatened and even fired for talking with a union. The court held that coercion against employees either to prevent or compel organizations is a violation of the employees' rights of free choice.[1] The court recognized that a cause of action on the part of the employees existed and reversed and remanded the trial court's decision to dismiss the employees' action which included a claim for punitive damages. In *Wetherton v. Growers Farm Labor Association*, 275 Cal.App.2d 168, 79 Cal.Rptr. 543 (1969), the court recognized a cause of action for intimidation and threats by the employer to the employees not to join the union. The court noted that the claim sounds in tort and that such actions violate the statute and public policy.

In the instant case, the appellees presented evidence at trial which, if taken as true, shows a violation of KRS 336.130. There was evidence that the workers were threat-

---

1. The Missouri Constitution contains a provision recognizing the right of employees to associate for collective bargaining.

ened before they ever attended the meeting with Pari–Mutuel and that the ten employees who went to the meeting were subsequently dismissed. Such actions by an employer are clearly violative of public policy and the employees' statutory rights. The complaint in this case asserted both violations of the statute and that a tort had been committed. Based upon the decision from other jurisdictions discussed above and the employer's behavior in the instant case, this Court has not been able to find that the circuit court erred by allowing recovery of punitive damages. Punitive damages are appropriate in such cases to discourage the violation of public policy and statutes by employers. The court's instructions on punitive damages and the jury's assessment of punitive damages were in keeping with the dictates of KRS 411.184 and 411.186. There was sufficient evidence presented to support the imposition of punitive damages. This case is distinguishable from *Grzyb v. Evans,* Ky., 700 S.W.2d 399 (1985); *Pari–Mutuel Clerks' Union v. Kentucky Jockey Club, supra,* and other cases cited by appellants. Neither case addressed the appropriateness of punitive damages in such a case.

■ Appellants next contend that the court erred by not directing a verdict in favor of Simpson County Steeplechase on the punitive damages claim. Simpson County Steeplechase contends that there was insufficient evidence presented that the corporation had anything to do with the termination of these employees for attending a union organization meeting. It maintains that respondeat superior is no longer a basis, in and of itself, for the establishment of a corporate employer's liability for punitive damages by virtue of the conduct of its agent. We have found no error.

KRS 411.184(3), in discussing punitive damages, states "[i]n no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." In the instant case, Shannon, the owner and sole shareholder of Simpson County Steeplechase, stated that Pessin had sole, unfettered discretion and authority to operate Dueling Grounds and to hire and fire employees. Shannon would occasionally consult with Pessin, but basically gave Pessin a blank check to do as he wished. Thus, this is not merely an agent/employee case. Further, the jury heard all of the evidence and was also free to believe or disbelieve the statements by Shannon and whether he had knowledge of the events surrounding the appellees. *Carter v. Builders Transport, Inc.,* 812 F.Supp. 97 (W.D.Ky.1992); *Franz v. Brennan,* 150 Wis.2d 1, 440 N.W.2d 562 (1989), and other cases cited by appellants are fundamentally distinguishable and do not support their contention. The cases from other jurisdictions regarding imposing punitives for employee terminations in breach of public policy seem to support the circuit court's decision.

■ In general, a motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made. *National Collegiate Athletic Association, By and Through Bellarmine College v. Hornung,* Ky., 754 S.W.2d 855, 860 (1988). When reviewing such a motion, the court may not consider the credibility of evidence or the weight it should be given; this is a function reserved to the trier of fact. *Id.* The court must draw all inferences to be drawn from the evidence in favor of the party against whom the motion is made. *Id.* The trial court must then determine whether the evidence favorable to the party against whom the motion is made is of such substance that a verdict rendered thereon would be palpably or flagrantly against the evidence, so as to indicate that it was reached as a result of passion or prejudice. *Id.* If it concludes such would be the case, a directed verdict should be given, otherwise the motion should be denied. *Id.* We have uncovered no error in the instant case.

■ Appellants further maintain that the circuit court erred by not setting aside the punitive damages portion of the jury's verdict, because it was clearly excessive and reached as a result of extreme passion and prejudice. Our review of the trial record has produced no such conclusion.

KRS 411.186(2) provides,

If the trier of fact determines that punitive damages should be awarded, the trier of fact shall then assess the sum of punitive damages. In determining the amount of punitive damages to be assessed, the trier of fact should consider the following factors:

(a) The likelihood at the relevant time that serious harm would arise from the defendant's misconduct;

(b) The degree of the defendant's awareness of that likelihood;

(c) The profitability of the misconduct to the defendant;

(d) The duration of the misconduct and any concealment of it by the defendant; and

(e) Any actions by the defendant to remedy the misconduct once it became known to the defendant.

Punitive damage awards are the product of numerous and sometimes intangible factors. A jury imposing punitive damages must make a qualitative assessment based on a host of facts and circumstances unique to the particular case before it. *TXO Production Corp. v. Alliance Resources Corp.,* —— U.S. ——, ——, 113 S.Ct. 2711, 2720, 125 L.Ed.2d 366 (1993). No two cases are truly identical, so meaningful comparisons of such awards are difficult to make. *Id. See also Hensley v. Paul Miller Ford, Inc.,* 508 S.W.2d at 763–764. Reasonable persons will differ in determining the amount of exemplary damages, but so long as the jury's decision is based on competent evidence, is free of passion or prejudice, and is appropriately reviewed by the trial judge, the reviewing court has no basis for substituting its opinion in place of the jury's opinion. *Hanson v. American National Bank & Trust Co.,* Ky., 865 S.W.2d 302, 310 (1993). The trial judge, in reviewing the verdict, applies the "first blush" rule as adopted in *Davis v. Graviss,* Ky., 672 S.W.2d 928 (1984). *Id.,* at 311. The trial jury and trial judge have the opportunity to see and hear the witnesses during a lengthy trial. *Id.*

This Court will not substitute our opinion for that of the trial court's on the issue of punitive damages. The amount awarded in this case was not so excessive as to require reversal. There was evidence presented that the terminated Dueling Grounds employees were treated poorly. Punitive damages far in excess of these have been upheld in other cases.[2] Appellants have presented nothing to show that the verdict was reached as a result of extreme passion and prejudice.

On cross-appeal, the cross-appellants contend that the circuit court erred in instructing the jury that the maximum damages it could award to them reflected a set-off for unemployment compensation benefits. They maintain that pursuant to KRS 341.415, the circuit court erred by having the jury deduct the amounts of unemployment insurance received by the terminated employees. This Court has found no reversible error.

KRS 341.415(1) provides in part,

Any person who has received any sum as benefits under this chapter ... if he has received benefits in weeks for which he later receives a back pay award, shall, in the discretion of the secretary, either have such sum deducted from any future benefits payable to him under this chapter or repay the department for the fund a sum equal to the amount so received by him.

Neither side in this appeal has presented any other authority which actually supports either position.

This cross-appeal appears protective in nature, and this Court has found no reversible error. Cross-appellants have not shown any prejudice. The statute clearly leaves the matter within the secretary of the unemployment commission's discretion. In this case, the trial court has already deducted the unemployment insurance received, and this should be taken into consideration at any unemployment commission proceedings.

The cross-appellants finally argue that the circuit court erred in denying them injunctive relief by refusing to award reinstatement to the individual plaintiffs or to

---

**2.** The Court in *TXO Production Corp. v. Alliance Resources Corp., supra,* upheld punitive damages that were 326 times the compensatory awards.

enjoin the cross-appellees' illegal anti-union activity directed toward cross-appellants. This argument clearly lacks merit.

This argument was considered and disposed of in *Pari–Mutuel Clerks' Union of Kentucky v. Kentucky Jockey Club, supra.* The Court was asked in that case to allow injunctive relief, and the Court refused. It stated that in order to grant the relief, it would be required to expand KRS 336.130 to make it an equivalent to the National Labor Relations Act. *Id.,* 551 S.W.2d at 803. It ruled the trial court lacked jurisdiction to grant the injunctive relief sought. *Id.* Cross-appellants have provided no other authority which supports their position.

For the foregoing reasons, the Simpson Circuit Court's judgment is affirmed.

All concur.