## METHODIST HOSPITAL OF KENTUCKY, INC., Appellant,

v.

## Wesley GILLIAM, Appellee.

### No. 2007–SC–000817–DG.

Supreme Court of Kentucky.

Jan. 22, 2009.

Rehearing Denied June 25, 2009.

James U. Smith, III, Kevin Michael Norris, Oliver Barrett Rutherford, Smith & Smith, Louisville, KY, Counsel for Appellant.

Lawrence R. Webster, Webster Law Offices, Pikeville, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

This Court granted discretionary review to address one issue—whether a wrongful discharge claim under state law is preempted by federal law (the National Labor Relations Act) where the discharge was allegedly based on the employee's participation in union organizing activities. We agree with the trial court that the National Labor Relations Board has exclusive jurisdiction over such claims, reversing the Court of Appeals.

Wesley Gilliam (Appellee) contends he was terminated from his employment with Methodist Hospital of Kentucky, Inc. (Appellant) because he was involved in preliminary efforts by the United Mine Workers of America to organize workers at Appellant's hospital. Gilliam filed a complaint for wrongful termination in violation of KRS 336.130 and requested damages for lost wages, impaired earning power, harm to his reputation, past and future pain and suffering, punitive damages, and attorney fees and costs.

The Appellant herein filed a motion to dismiss, which was granted by the trial court because the complaint was "grounded on conduct by Defendant that, if true, would violate §§ 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157 and 158;" and such violations of the Act were within the exclusive jurisdiction of the National Labor Relations Board. The Court of Appeals reversed concluding that "[s]tate action was not preempted since such claims do not fall within the 'conduct that is actually or arguably either prohibited or protected by the' NLRA." (citations omitted). The Court of Appeals went on to hold that Gilliam's limited claims for relief "fell squarely within the parameters of *Pari–Mutuel* and *Simpson County* ...." We granted discretionary review because federal preemption is involved, and because there is a distinguishing factor for the results reached in *Pari–Mutuel Clerks' Union of Kentucky v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky.1977) and *Simpson County Steeplechase Ass'n, Inc. v. Roberts*, 898 S.W.2d 523 (Ky.App.1995).

The United States Supreme Court case of *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) held that "When an activity is arguably subject to [§ ] 7 [29 U.S.C. § 157] or [§ ] 8 [29 U.S.C. § 158] of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 29 U.S.C. Section 157 provides in relevant part:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right

to refrain from any or all of such activities ....

29 U.S.C. Section 158 provides in relevant part:

> It shall be an unfair labor practice for an employer—
>
> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
> ...
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization ...;
> (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter ....

The U.S. Supreme Court has recognized, however, that the preemption doctrine of *Garmon* is not without exception, that being:

> [W]here Congress has affirmatively indicated that such power should exist. [W]here this Court cannot, in spite of the force of the policies *Garmon* seeks to promote, conscientiously presume that Congress meant to intrude so deeply into areas traditionally left to local law and where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes.

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297–298, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) (internal citations omitted).

> Under *Garmon*, a state may regulate conduct that is of only peripheral concern to the [National Labor Relations]

Act or which is so deeply rooted in local law that the courts should not assume that Congress intended to preempt the application of state law.... [A] critical inquiry in applying the *Garmon* rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could be presented to the Board.

*Belknap, Inc. v. Hale,* 463 U.S. 491, 509–510, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (internal citations omitted). An allegation of wrongful discharge based upon participation in union-organizing activities is clearly impermissible discrimination in regard to tenure, term or condition of employment under 29 U.S.C. Section 158, based upon the exercise of lawful rights given under 29 U.S.C. Section 157. Therefore, the Court of Appeals' holding that state action was not preempted because Gilliam's claims "do not fall within the 'conduct that is actually or arguably either prohibited or protected by the' NLRA" was error.

The Court of Appeals also erroneously interpreted the holding of *Pari–Mutuel* as applying to the case sub judice. It does not. *Pari–Mutuel,* as well as *Simpson County,* concerned labor disputes within the horse racing industry. Pursuant to 29 U.S.C. Section 164(c)(1), the NLRB declines to assert jurisdiction over the horse racing and dog racing industries. 29 U.S.C. Section 164(c) provides, in relevant part:

Power of Board to decline jurisdiction of labor disputes; assertion of jurisdiction by State and Territorial courts

(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to subchapter II of chapter 5 of Title 5, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction.

The NLRB has always declined to assert jurisdiction over the horse racing and dog racing industries. *Hialeah Race Course, Inc.,* 125 N.L.R.B. 388, 1959 WL 14737 (N.L.R.B.1959) (noting that on August 1, 1959, the Board was following a policy of nonassertion of jurisdiction as to racetrack operations); *New York Racing Ass'n, Inc. v. N.L.R.B.,* 708 F.2d 46 (2d Cir.1983). In 1973, the Board adopted a formal regulation to this effect.[1] Under 29 U.S.C. Section 164(c)(2), the states are therefore permitted to assert jurisdiction in labor disputes within the *horse racing* and dog racing industries.

The case sub judice does not involve the horse racing or dog racing industries. Appellant's claim of wrongful discharge based on participation in union organizing activities falls squarely under 29 U.S.C. Section

---

**1.** 29 C.F.R. Section 103.3 provides: "The Board will not assert its jurisdiction in any proceeding under sections 8, 9, and 10 of the Act involving the horseracing and dogracing industries." *See New York Racing Ass'n,* 708 F.2d at 48.

157 and 29 U.S.C. Section 158. Therefore, exclusive jurisdiction resides with the National Labor Relations Board. *Garmon,* 359 U.S. at 244–245, 79 S.Ct. 773; *Lockridge,* 403 U.S. at 293, 91 S.Ct. 1909.

The Court of Appeals decision is reversed and the trial court's dismissal under federal preemption is reinstated.

All sitting. All concur.